[No. 5626.]

THE PEOPLE EX REL. THE COLORADO BAR ASSOCIATION v. HUMBERT.

1. TRUSTEE—*Deposit of Trust Funds*—One who receives money to hold for another, should, if he places it in bank, deposit it as a trust fund, and not to his individual credit—(62).

2. ATTORNEY—*Misconduct*—An attorney who in a business transaction is guilty of conduct involving moral turpitude will be disbarred—(64).

The facts examined and respondent exonerated. Original proceedings in disbarment.

Mr. JOHN H. GABRIEL, for relator.

MR. THOMAS WARD, JR., for respondent.

Mr. JUSTICE WHITE delivered the opinion of the court:

The purpose of this suit is to have the name of respondent stricken from the roll of attorneys entitled to practice at the bar of this court. The information contains four separate charges of unprofessional conduct. No evidence was submitted in support of the sec-

ond and third charge, and they are eliminated from consideration.

The allegations of the first are, substantially, that respondent, while attorney for one William Westlake in the prosecution of a divorce suit against the latter's wife, received of his client certain sums of money with the understanding that a certain amount thereof should be held by him until the divorce was granted, and thereupon turned over to Mrs. Westlake as alimony, and the balance to be likewise held and disposed of for court costs; that respondent failed and refused to pay the court costs, and likewise failed and refused to pay a considerable portion of the alimony due Mrs. Westlake. Respondent admits the employment, and the receipt of the money for the purposes alleged; claims that he entered into an agreement with Mrs. Westlake to retain the money and pay it over to her as she should desire; that he performed the contract and paid over the full amount, except $15.00, which he was ready and willing to pay whenever requested so to do by Mrs. Westlake.

The undisputed evidence shows that Mrs. Westlake and her agent, subsequent to the trial of the divorce suit, called upon respondent and demanded of him the money; that the latter then stated that he had deposited the money in a bank, and it had been levied upon or attached, and he was, therefore, unable to get it and could not then pay, but promised to do so within a few months, which seemed to be satisfactory to Mrs. Westlake. Thereafter, from time to time, respondent paid a portion of the amount, and, at the request of Mrs. Westlake, executed and delivered to her his note for $100.00 thereof, which she negotiated to a furniture company. Payments were made on this note so at the time of the institution of this suit, there was about $60. of the indebtedness still remaining unpaid. Mrs. Westlake testified that respondent had been paying her "according to the agreement made with him," and she be-

lieved he would pay the balance in accordance there-with.

An examination of the entire evidence pertaining to this matter, fails to disclose any fraudulent or dishonorable intent on the part of the respondent. There was no deception, no untruthful statement concerning the matter. He frankly admitted that he had received the money. He asserted that he had deposited it in a bank where it had been attached, and he was unable to secure it. If respondent deposited the money in a bank, and the money was tied up or lost by attachment proceedings, and he was unable to have the money forthcoming, we do not think such misfortune constitutes a cause for disbarment. We think respondent should not have deposited the money other than as a trust fund. Moreover, he should have set forth in his answer that he had deposited the money and the facts concerning its loss, and at the hearing fully explained the matter by his own testimony. We can not, however, say that because he failed in these respects, he should be disbarred, when the evidence of petitioner shows that he gave a frank and reasonable explanation of the entire matter, and there was no evidence in any wise discrediting his explanation. Under these circumstances, we will presume that he spoke the truth. If his explanation was false, petitioner had ample opportunity to establish that fact.

The fourth cause grew out of an alleged sale by respondent of a certain diamond ring which he had received from one Dr. Spring as security for the payment of the latter's note. There is no pretence that respondent was acting in this transaction as attorney for Spring. The evidence was somewhat contradictory, yet the weight thereof establishes the fact, that Spring was owing respondent certain money, which the latter insisted should be paid at once, as he was under the necessity of raising a considerable sum to meet his own obli-

gations; that Spring was unable to pay and voluntarily executed a new note, payable six months after its date, and gave respondent the ring, with the distinct understanding that the latter could use the ring, along with other jewelry, for the purpose of raising money thereon to meet his pressing obligations, Spring promising to have the money forthcomng in a very short time with which to redeem the ring. Spring failed in that respect and thereupon respondent pledged the ring under the authority previously delegated to him by Spring. Spring defaulted in payment of his note to respondent, and the latter defaulted in the payment of his notes to the party to whom he had pledged Spring's ring, together with other jewelry, and the person holding respondent's notes and Spring's ring assumed to foreclose the pledge and acquire ownership of the ring. Almost two years after Spring's default in the payment of his note, he made payment thereof to respondent, and the latter thereupon undertook to secure the ring again, but in this failed for the want of funds, though he apparently made some payments toward such purchase. Spring was under the necessity of, and did repurchase the ring at considerable outlay, and has never been reimbursed therefor by respondent.

At the time respondent parted with the ring he executed a bill of sale therefor, together with other jewelry, for an express consideration of approximately $189.00 and delivered the same, together with his promissory notes for a like amount, receiving in lieu thereof a like amount of money. Petitioner contends that the bill of sale was absolute, and that the alleged pledge was, in fact, a real sale. We are of the opinion that such meaning should not be ascribed to the transaction, but it properly should be held a pledge as hereinbefore stated. The very fact that the delivery of the jewelry, and bill of sale was accompanied by notes, is a strong circumstance supporting respondent's positive testi-

mony that the transaction was a pledge and was so understood by all parties. While it is true, that if an attorney, in business transactions, is guilty of fraud, involving moral turptitude, his name should be stricken from the roll of attorneys—*People v. Sindlinger*, 28 Colo. 258—we are not prepared to say that the evidence and circumstances of this case bring respondent within the rule. The order to show cause is, therefore, set aside, and the proceedings dismissed.

*Petition dismissed.*

Decision *en banc.*